**COLEMAN CAPITAL CORPORATION,**
Plaintiff-Appellant,

v.

**TRAVELERS INDEMNITY COMPANY,**
Defendant-Appellee.

No. 629, Docket 35822.

United States Court of Appeals,
Second Circuit.

Argued March 23, 1971.

Decided May 25, 1971.

Carl B. Shapiro (argued), San Anselmo, Cal., for defendant-appellant.

Jeny Cimmit (argued), Asst. U. S. Atty., James L. Browning, U. S. Atty., F. Steele Langford, Chief, Crim. Div., San Francisco, Cal., for plaintiff-appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and SMITH,* District Judge.

* Honorable Russell E. Smith, United States District Judge, Missoula, Montana, sitting by designation.

Leon C. Baker, New York City, for plaintiff-appellant.

Richard H. Tunstead, New York City (Spencer & Tunstead, New York City, Lester B. Lipkind, Babylon, N. Y., on the brief), for defendant-appellee.

Before WATERMAN, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This action arose out of the construction of an office building in Garden City, Long Island. The defendant, Travelers Indemnity Company, is the surety on a labor and materials payment bond executed by the general contractor to secure the payment of all subcontractors, materialmen and laborers. In order to complete certain specified concrete work required in the construction of the building, the general contractor engaged Presgold Construction Corporation as a subcontractor. Presgold lacked sufficient funds to finance its performance of the subcontract and arranged financing with the plaintiff, a small business investment company licensed by the Small Business Administration.

In the contract between Presgold and the plaintiff, Presgold assigned to the plaintiff all sums of money due or to become due to Presgold on the subcontract work for the building as security for plaintiff's extending a line of credit of $25,000 to Presgold for this and several other projects. Presgold covenanted that it would receive and hold any and all monies advanced under the lending agreement as trust funds pursuant to N.Y. Lien Law § 13(6) (McKinney's Consol.Laws, c. 33, 1966) to be applied to the payment of claims of subcontractors, architects, engineers, materialmen and laborers.

Under the lending agreement, plaintiff advanced to Presgold a total of $126,420.79 to be used to conduct work on the Garden City building and for several other construction jobs which Presgold had under contract at the same time. Total payments of $90,055.21 were received under the assignment, leaving a net advance of $36,365.58 which has not been repaid. Ledger sheets of the plaintiff show that a separate account was not kept of the receipts and disbursements on each construction job, but only a total for all the advances and receipts for all Presgold's construction work wherever done.

The plaintiff would have been completely repaid had Presgold completed the subcontract as planned and had the main contractor paid Presgold according to the original plan. Disputes, however, arose in 1965 between the general contractor and Presgold over its concrete work, resulting in the general contractor's holding up payments to Presgold. Presgold in turn failed to pay various suppliers and laborers whose claims are the basis of this suit.

Plaintiff at this juncture found itself in a difficult position. It was doubtful that the balance due on the subcontract would be paid. If, as a result, Presgold did not pay the claims of the materialmen and laborers then Presgold would be out of business and plaintiff would lose the advances it had made on this and other projects. In order to protect itself plaintiff decided to "purchase" claims totalling $15,709.14 from Presgold's materialmen and laborers. It took assignments from the payees. These payments were found by the district court to have been entered as advances to Presgold's loan account on the plaintiff's ledger sheets. Had the work progressed after February 19, 1965 as planned, more assigned funds would have come into existence, but Presgold did its last work on the building about March 22, 1965, and was not entitled to any further payments because, as the district court found, it "had not * * * substantially performed its work either in extent or in quality * * * when it left the job * * *."

Upon later discovering that the general contractor had executed a labor and materials payment bond with the defendant as surety, plaintiff brought suit against the defendant upon the assignment of the claims of the suppliers and laborers of Presgold. In the first cause of action, plaintiff sought recovery of $4,016 which Presgold failed to pay to a supplier of ready mixed concrete. In the second, plaintiff sought $165 due to a lumber supplier. In the third cause of action, recovery was sought for $11,528.-14 of unpaid wages owed by Presgold to its employees. The fourth, fifth and sixth causes of action were for funds to become due to Presgold under the subcontract; but the court below ruled that nothing more was due on the subcontract, and plaintiff has not appealed from that determination. The court granted summary judgment to the defendant on the first two causes of action on the ground that plaintiff had not given timely notice to defendant on those claims. Partial summary judgment was at first granted to plaintiff on the third cause of action for those claims asserted within the required time, but later this order was reversed and summary judgment was also granted to defendant on the entire third cause of action. Plaintiff appeals the determination of the district court granting summary judgment on these first three causes of action. We affirm the dismissal of all three causes of action.

The district court properly dismissed plaintiff's first and second causes of action, since plaintiff clearly failed to assert his claim within the time required by the language of the payment and performance bond upon which recovery would be based. The bond provides as follows:

"3. No suit of action shall be commenced hereunder by any claimant,

(a) unless claimant * * * shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named,

within ninety (90) days after such claimant did or performed the last of the work or labor or furnished the last of the materials for which claim is made * * * Such notice shall be served by mailing the same by registered mail or certified mail * * * to the Principal, Owner or Surety." The findings of the district court show that the last of the ready mix concrete, upon which the first cause of action is based, was delivered on March 5, 1965 and that notice of the claim was first given to the general contractor and defendant on June 7, 1965, i. e. ninety-four days after the last delivery. The lumber, forming the basis of the second cause of action, was last delivered on February 23, 1965 and notice was not given until June 7, 1965, well over ninety days after the last delivery. However, of the $11,528.14 claimed in the third cause of action, only $192.78 related to laborers who did not perform their last work within ninety days before June 7, 1965.

■ Plaintiff argues that it should be excused from its failure to give timely notice, because plaintiff did not know of the existence of a payment bond in addition to the customary performance bond, that the bond's existence was only disclosed inadvertently to plaintiff by the attorney of the general contractor, and that once plaintiff learned of the bond, notice was given within thirty days. As support for its position, plaintiff cites a large body of New York law excusing a beneficiary of a life or fire insurance policy for delay in giving notice if notice is given within a reasonable time after discovery of the existence of the policy. See, e. g., Solomon v. Continental Fire Ins. Co., 160 N.Y. 595, 55 N.E. 279 (1899); Greaves v. Public Service Mutual Ins. Co., 4 A.D.2d 609, 168 N.Y.S.2d 107, 111–112 (1st Dept. 1957), aff'd 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959); and see 31 N.Y. Jurisprudence, Insurance § 1280 (1963).

The position of the plaintiff is not, however, like that of an inexperienced and relatively powerless beneficiary of a life or fire insurance policy. The plaintiff here is an experienced lender to people such as the subcontractor Presgold and thus in the district court's words "must be taken to be chargeable * * * with notice of the bond's few brief clauses, and the utterly expectable ninety day clause." In addition, the cases cited by plaintiff do not waive timely notice but require that notice be given as soon as practicable in light of all the circumstances and further require that claimants exercise diligence in discovering the coverage and its terms, and in giving required notice. In light of the "obvious likelihood that there were payment and performance bonds," the ease with which plaintiff could have ascertained their existence, and the thirty days taken to give notice after learning of the bonds, it cannot be said that plaintiff has met the standard of diligence required to excuse it from literal compliance with the notice clause. See Deso v. London & Lancashire Indem. Co., 3 N.Y.2d 127, 129–130, 164 N.Y.S.2d 689, 691–692, 143 N.E.2d 889, 890–891 (1957).

■ Plaintiff further urges that because the defendant did not immediately return the claims as untimely but retained them and asked for further information defendant thereby waived the lateness of the notices. We cannot accept this argument. Defendant's letter of July 2, 1965 requesting further information did raise the question of lateness and cannot be construed to have waived the very point which it made. Moreover, cases which apply estoppel to a situation such as this require a showing of reliance to the detriment of the person claiming waiver. No such showing has been made here. Simple retention of the claims cannot be effective to excuse the lateness of notice. Perry v. Caledonian Ins. Co., 103 App.Div. 113, 93 N.Y.S. 50, 52, (3d Dept.1905); Sinincrope v. Hartford Fire Ins. Co., 207 App.Div. 114, 201 N.Y.S. 615, 618 (4th Dept. 1923).

In ruling for the defendant on the remaining third cause of action, the district court reasoned that "plaintiff is impotent to show in fact that it made the wage payments with its own funds as open market purchases rather than as applications of what it knew in fact were trust funds received by virtue of an assignment from one known to be far in arrears in the satisfaction of the trust claims attaching to those funds." Plaintiff contends that because of N.Y. Lien Law § 13 (McKinney 1966),[1] funds received from Presgold by virtue of the assignment were not trust funds and that as a result plaintiff could apply those fresh funds in open competition with other investors to buy assignments of the wage claims.

Plaintiff made a decision to sink more assets into Presgold's floundering enterprises in the hope that further payments would be forthcoming. The court below found as a matter of fact that the plaintiff not only purchased the wage claims but "charged [them] as advances to

---

1. The relevant portions of N.Y. Lien Law § 13 (McKinney 1966) are the following:
(1–a) Parties having assignments of moneys due or to become due under a contract for the improvement of real property, unless such assignments be set aside as diversions of trust assets as provided in article three-a of this chapter, shall have priority as follows: An assignee of moneys or any part thereof, due or to become due under a contract for the improvement of real property, whose assignment is duly filed prior to the filing of a notice of lien or assignment of every other party to the action, shall have priority over those parties to the extent of moneys advanced upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, but as to moneys advanced subsequent to a notice of lien or assignment filed and unsatisfied or not discharged such assignee for the purpose of determining his proportionate share of moneys available for distribution as provided in subdivision one of this section shall be treated as a lienor having a lien to the extent of moneys so advanced.
An assignee of moneys or any part thereof, due or to become due under a contract for an improvement of real property whose assignment is duly filed subsequent to the filing of the notice of lien or assignment of any other party shall for the purpose of determining his proportionate share of moneys available for distribution, as provided in subdivision one of this section be treated as a lienor having a lien to the extent of moneys actually advanced upon such assignment prior to the filing thereof.
* * * * *
(3) Every such building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion of the improvement shall contain a covenant by the mortgagor that he will receive the advances secured thereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement, and that he will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose, provided, however, that if the party executing the building loan contract is not the owner of the fee but is the party to whom such advances are to be made, a building loan contract executed and filed pursuant to section twenty-two of this chapter shall contain the said covenant by such party executing such building loan contract, in place of the covenant by the mortgagor in the building loan mortgage as hereinbefore provided. Nothing in this subdivision shall be considered as imposing upon the lender any obligation to see to the proper application of such advances by the owner; and nothing in this section, nor in that portion of section two of this chapter, defining "cost of improvement" shall be deemed to impair or subordinate the lien of any mortgage containing the covenant required by this subdivision. To the extent that the trust res consists of the right to receive advances as distinct from advances actually received, breach of the trust shall give rise to a civil action only. The covenant provided for herein shall be deemed to have been made and to be in full force and effect if, in lieu of the foregoing provisions, a statement in substantially the following form is contained in the mortgage or contract, "subject to the trust fund provisions of section thirteen of the lien law."

**52**

Presgold's loan account." Thus the transaction was not an open-market purchase of wage claims but a further loan to Presgold. Once characterized as further advances to Presgold, there is no doubt that these monies then constituted a "trust fund to be applied first for the purpose of paying the cost of improvement" (N.Y. Lien Law § 13(3) (McKinney 1966)) and to pay "laborers and materialmen * * *." N.Y. Lien Law § 71(2) (a) (McKinney 1966). These monies were used to satisfy unpaid laborers exactly as the statute requires. Since it was found that Presgold was not entitled to any further payments from the contractor, defendant, who acted as the contractor's surety, could not be required to make further payments. The purported assignments from these laborers cannot be valid, since the obligation which they represent—Presgold's debt—was extinguished by their very purchase by plaintiff for Presgold's account. Plaintiff in effect has tried to "have its cake and eat it too" by characterizing its action as open market purchases of assignments and at the same time charging the purchases as further loans to Presgold.

The determination of the district court must be affirmed.