United States Court of Appeals,

Fifth Circuit.

No. 93-7414.

FARMERS HOME ADMINISTRATION, Etc., Plaintiff-Appellee,

v.

James I. MUIRHEAD, et al., Defendants.

James I. MUIRHEAD, et al., Defendants-Third Party Plaintiffs-Appellants,

v.

SEA LANDS, INC., Third-Party Defendant-Appellee.

Jan. 24, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, JONES, Circuit Judge, and FULLAM[*], District Judge.

EDITH H. JONES, Circuit Judge:

The question in this case is whether the Farmers Home Administration, a federal agency, may be barred by state statute from enforcing its lien on Mississippi property, when the statutory bar arises from FmHA's untimeliness. Consistent with other federal courts of appeals, we hold that it may not be so barred. Unlike those other courts, however, we consider this a problematic result.

During 1979 and 1980, the Muirhead defendants executed promissory notes in favor of the Farmers Home Administration (FmHA) that were secured by deeds of trust on properties located in Mississippi. In April 1982, FmHA sent the Muirheads notices of

---

[*]District Judge of the Eastern District of Pennsylvania, sitting by designation.

acceleration declaring all of the promissory notes immediately due and payable. A second notice of acceleration and demand for payment was sent to the Muirheads in May 1985.

FmHA prepared to initiate foreclosure proceedings on the deeds of trust in October 1991 and brought this action to reform one of the deeds. The Muirheads answered and counterclaimed that under Mississippi law, none of the liens was enforceable because the statute of limitations had run on each of the underlying notes. While this action was pending, the properties covered by the deeds of trust—except for the property at issue in the reformation action—were sold by FmHA at a foreclosure sale. As a result, the Muirheads amended their counterclaim to set aside the sales.

The district court granted the government's motions to dismiss the counterclaim and for summary judgment. The court concluded that, while FmHA may have been time-barred by federal law, 28 U.S.C. § 2415(a) (1988), from bringing an action on the notes, the government was not barred by limitations from bringing a foreclosure action.[1] We have reviewed the judgment of the district

---

[1]Section 2415(a) provides in relevant part:

> [E]very action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

28 U.S.C. § 2415(a) (1988). For purposes of the motion to dismiss and for summary judgment, the district court assumed that the six-year limitations period had in fact run.

court and AFFIRM.[2]

Under a nationwide federal loan program like that of FmHA, it is settled that federal law ultimately controls the government's rights and responsibilities. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). Where no specific federal statute or regulation governs the matter at hand, federal courts must "fill the interstices of federal legislation "according to their own standards.' " *Id.* at 727, 99 S.Ct. at 1458 (quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)). Normally, however, "matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC,* --- U.S. ----, ----, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994).

Applying these principles to determine whether FmHA's foreclosure action against the Muirheads' property was barred by state law is a matter of characterization. To the federal government, the Muirheads' state law argument artfully dodges the essential fact that they would impose a state time bar upon the FmHA's remedy of foreclosure. A time bar, in the view of FmHA and

---

[2]In reviewing a 12(b)(6) dismissal, the court accepts all well pleaded averments as true, viewing them in the light most favorable to the non-movant. *See Cooper v. Sheriff, Lubbock County,* 929 F.2d 1078, 1082 (5th Cir.1991). The dismissal should not be upheld unless it appears beyond doubt that the Muirheads can prove no set of facts which would entitle them to relief. *See id.* Since the Muirheads conceded below that the government's motion for summary judgment on its complaint for reformation should be granted if the court granted FmHA's motion to dismiss, we appropriately focus our review on the 12(b)(6) dismissal of the amended counterclaim.

other court decisions,[3] is a statute of limitations. State statutes of limitations do not, however, run against the federal government. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1014, 1020, 84 L.Ed. 1283 (1939).[4] This ancient prerequisite of federal sovereignty constitutes a specific rule of decision that renders nugatory the federal courts' duty to select a federal rule or adopt state law as the rule of decision. *See Kimbell Foods, Inc., supra.* In the terms of *O'Melveny, supra,* if this is a statute of limitations case, there is no matter left unaddressed by federal law that must be supplemented by a state rule of decision.

The Muirheads naturally resist the reduction of their position

---

[3]*United States v. Alvarado,* 5 F.3d 1425, 1430 (11th Cir.1993); *Westnau Land Corp. v. United States Small Business Admin.,* 1 F.3d 112, 115 (2d Cir.1993); *United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1490 (9th Cir.1993) (in dicta); *United States v. Ward,* 985 F.2d 500, 502 (10th Cir.1993); *but see United States v. Thornburg,* 835 F.Supp 543 (E.D.Cal.1993).

[4]*See also Guaranty Trust Co. v. U.S.,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938); *Board of Jackson Cty. Comm'rs. v. U.S.,* 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939); *United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960); *United States v. California,* --- U.S. ----, ----, 113 S.Ct. 1784, 1790-91, 123 L.Ed.2d 528 (1993).

> In *U.S. v. California, supra,* the Court noted that in *Summerlin* and in *Board of Comm'rs,* the right at issue [that was not barred by a state limitation statute] was obtained or created by a federal statute, and in *John Hancock,* there was a federal limitations period, and in each of those cases, "the Government was proceeding in its sovereign capacity." --- U.S. at ----, 113 S.Ct. at 1791. The Court then states that, "whether in general a state-law action brought by the United States is subject to a federal or state statute of limitations is a difficult question." *Id.* Because SBA's "state-law action" to foreclose arose from a federal loan program and SBA was proceeding "as the sovereign", the "difficult question" noted by the Court is not present here.

to a statute of limitations question. To them, the FmHA's ability to foreclose after the remedy on their underlying debt has been time-barred presents an issue of substantive state property rights, which flows from Mississippi's subscription to the lien theory of mortgages. In Mississippi, as in several other states, "where a debt is barred, the mortgage cannot be enforced." *Musser v. First National Bank of Corinth,* 165 Miss. 873, 147 So. 783, 784 (1933). The lien is incident to the debt and does not stand separately. *See* GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES 608-12 (2d ed. 1970) (discussing intricacies of "lien theory" and "title theory"). Many other states, by contrast, have adhered to the title theory of mortgages, which has evolved over the years to hold that a lien does survive notwithstanding the expiration of the period for recovery on the debt. Property law varies considerably from state to state on this issue. Federal law ought to and does ordinarily rely on state law to define the incidents of real property ownership for purposes of implementing federal loan programs. *Foster v. United States,* 221 Ct.Cl. 412, 607 F.2d 943, 948 (1979) ("[I]n determining the nature of the property rights created by a conveyance ... courts have applied the law of the situs of the real property involved"). The Muirheads conclude that, as *O'Melveny* put it, the circumstances under which FmHA's foreclosure may be barred by the expiration of the underlying debt do not constitute one of the "unusual" cases in which judicial creation of a specific "federal common law" rule "would be justified." --- U.S. at ----, 114 S.Ct. at 2055.

5

For several reasons, we concur in the government's characterization of the case. First, while the lien extinction argument advanced by the appellants has surface appeal, the statute on which they must rely more clearly supports the government's position. Found in chapter 15 of the Mississippi Code, entitled "Limitations of Actions," § 15-1-21 provides in relevant part:

> When a mortgage or deed of trust shall be given on real or personal estate, or when a lien shall be given by law, to secure the payment of a sum of money specified in any writing, an action or suit or other proceedings shall not be brought or had upon such lien, mortgage, or deed of trust to recover the sum of money so secured except within the time that may be allowed for the commencement of an action at law upon the writing in which the sum of money secured by such lien, mortgage, or deed of trust may be specified.

This statute reads like a statute of limitations: it forecloses an action or proceedings to enforce a lien not brought within the time for commencing a suit on the debt involved.

Second, to the extent the Muirheads concede that federal law, 28 U.S.C. § 2415(a), prescribes the limitation period for suit on FmHA's debt, even as to the application of § 15-1-21 they inferentially concede that some general federal law bears upon the limitation period governing the agency's action to foreclose its mortgage. Absent a specific federal limitation,[5] the thus-far unwavering federal rule exempting the federal government from statutes of limitations other than those enacted by Congress readily steps into this breach.

Third, every federal appellate court that has addressed

---

[5] 28 U.S.C. § 2415(c) does not apply to actions to foreclose mortgages.

6

whether there is a time bar on federal agencies' pursuit of real property foreclosure actions has agreed with the FmHA's position and has concluded that no such bar exists. *Supra* n. 3. This includes one decision, not analyzed by appellants, originating from Oklahoma, a lien theory state. *United States v. Ward,* 985 F.2d 500 (10th Cir.1993).

Consequently, as the Muirheads must rely on an unabashed state statute of limitations, while venerable federal caselaw and the uniform rule among the circuit courts of appeals hold that no state limitations period, and specifically none governing foreclosures, is effective against the federal government, their appeal cannot succeed.

But although present authority compels acceptance of FmHA's position, we are troubled by the federal government's insistence that it may enforce ancient mortgages outstanding in numerous, long-lived and often default-prone federal lending programs essentially forever. The continued existence of these mortgages may cloud titles to property all over the country, and in so doing will engender confusion, higher real property transaction costs, and commercial instability. If federal agencies simply conformed their lending practices to the dictates of state law, as every private lender must, they would act more promptly upon defaulted mortgages and would not prejudice the alienability of reality.

The government's central proposition—that limitations may not run against the sovereign—seems quite inappropriate in the context of federal loan programs. In *Kimbell Foods, supra,* the Supreme

7

Court devised a three-part test for determining when a federal rule of decision should supplant state law in cases involving federal loans. Courts must consider whether uniform national administration of the federal program is necessary, whether use of a state law rule will frustrate the federal objective, and whether a federal common law rule might disrupt commercial expectations founded upon state law. In *Kimbell Foods,* the pleas by FmHA and SBA for "uniformity", "protecting the federal fisc," and "ease of administration" were unanimously rejected in favor of maintaining stability and predictability in local commercial law. The Supreme Court understood that superimposing on state commercial law special federal rules to govern lien priorities arising from federal loan programs would become hopelessly complex and would ultimately have adverse economic effects.

Similarly, in *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), the Court recognized an important federal policy to preserve the integrity of state family law and property relationships, which it held must prevail over SBA's desire for agency-favoring federal common law rules of decision. *Yazell* commented, in regard to the SBA loan program, that there was no specific need for uniformity, no problem in complying with state law, and in fact, SBA's compliance manual already carefully conformed its loans to the requirements of state law. 382 U.S. at 357, 86 S.Ct. at 509.[6] Most recently, in *O'Melveny,* the Court

---

[6]Surely the national interest in maintaining the consistency of state real property law is as great as the policy at stake in *Yazell,* and the inconvenience to SBA or FmHA of fully and timely

seems to suggest that only when there is outright conflict between federal law and state law regarding a federal regulatory scheme must state law be displaced. --- U.S. at ----, 114 S.Ct. at 2055. Apart from the *Summerlin* principle, there is, as clearly evident in *Kimbell* and *Yazell,* no ground for conflict between state and federal rules of decision regarding the enforceability of government-backed mortgages.

Contrary to the commercial realism prominent in all of these cases, the ancient attribute of sovereignty asserted by the federal government is far more appropriate to essential sovereign functions than to the federal government's role as a lender to veterans, small business owners, farmers, and disaster victims among others. That the attribute is ancient does not make it sensibly applicable to the government's role in commercial transactions. In fact, doing away with limitations periods on a significant number of mortgage foreclosures takes a giant step backwards from the standpoint of public policy concerns for fairness and economic efficiency. Nearly every state has enacted laws to prevent the disruption of commerce in real property caused by the existence of ancient mortgages.[7] In short, *Summerlin* and related cases ought to be reconsidered insofar as they hold that state statutes of limitations may not be applied to the government's real property

complying with state law is just as small.

[7]*See* GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES 621-23 (2d ed. 1970) (describing emerging trend of states to create "ancient mortgage" statutes allowing one to merely check the record and refer to a calendar to determine whether a very old mortgage continues to cloud title).

foreclosure actions arising from federal loan programs. Alternatively, Congress should amend 28 U.S.C. § 2415 expressly to so provide.

For the foregoing reasons, the judgment of the district court is AFFIRMED.