UNITED STATES of America,
Plaintiff–Appellee,

v.

PEOPLES HOUSEHOLD
FURNISHINGS, INC.,
Defendant,

Edward J. Holland, Jr., Defendant–
Appellant.

No. 93–2360.

United States Court of Appeals,
Sixth Circuit.

Submitted June 5, 1995.

Decided Feb. 6, 1996.

Ellen Christensen (briefed), Jacqueline M. Hotz, Office of the U.S. Atty., Detroit, MI, for Plaintiff–Appellee.

Clarence B. Tucker, Sr. (briefed), Detroit, MI, for Defendant, Defendant–Appellant.

Before: NELSON and RYAN, Circuit Judges, and ECHOLS, District Judge.*

---

* The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennes-   see, sitting by designation.

NELSON, J., writing for the court, delivered an opinion in which ECHOLS, D.J., concurred. RYAN, J., concurred in all but Part III of the opinion.

DAVID A. NELSON, Circuit Judge.

Michigan law establishes a ten-year limitations period for actions founded upon judgments. See Mich.Comp.Laws 600.5809(3). In the case at bar the United States, which in 1978 obtained a money judgment against defendant Edward Holland in the United States District Court for the Eastern District of Michigan, brought suit on the judgment in the same court 15 years later. Relying on *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), where the Supreme Court held that the United States is not bound by state statutes of limitation insofar as claims acquired and asserted in a governmental capacity are concerned, the district court rejected a statute of limitations defense and granted judgment to the United States for the unpaid balance of the original judgment plus interest.

The claim on which the original judgment was based rested on an undertaking given by Mr. Holland in connection with a federal loan guaranty program administered by the Small Business Administration. On the facts presented, we conclude that the United States was acting in its governmental or sovereign capacity in acquiring the claim, reducing it to judgment, and later bringing suit on the judgment. We agree with the district court that the government's lawsuit was not time-barred, and we shall affirm the judgment appealed from.

I

Under a loan guaranty program designed to promote the training and hiring of members of racial minorities, as we are told in defendant Holland's brief, a minority-owned company called Peoples Household Furnishing, Inc., borrowed $350,000 from the Bank of the Commonwealth in 1970. The Small Business Administration—a government agency established by § 204 of the Small Business Act of 1953, 67 Stat. 233 (codified in 1958 at 15 U.S.C. § 633)—guaranteed 90 percent of the loan. The loan was also guaranteed by Mr. Holland.[1]

The loan was memorialized in a promissory note that apparently was subject to the terms of a financing agreement entered into between Peoples and the bank. The financing agreement, we are told, recited that it was governed by the laws of the State of Michigan. (The pertinent documents were not included in the record of the present case, and motions to expand the record were denied by the district court and by a panel of this court.)

The note went into default, and in 1971, pursuant to prior agreement, the bank assigned the note to the SBA. Accelerating the maturity of the note, SBA made demand upon Peoples and Mr. Holland for payment in full. The demand was not honored, so the assets of the corporation were liquidated at a public sale and credited against the balance due.

In December of 1973 the government brought a federal court suit against Peoples and Mr. Holland for the deficiency. Peoples received a discharge in bankruptcy before the case went to judgment, but in February of 1978 the district court entered judgment against Mr. Holland on his guaranty. The judgment, which included accrued interest, was for $435,486.99 plus costs of $125.26 and interest of six percent per annum from January 18, 1978. This court affirmed the judg-

1. An unpublished opinion filed by this court in 1981 notes that Mr. Holland was the president of Peoples; that Peoples evolved from the remnants of a Detroit-area retailer that had been forced into reorganization under Chapter XI of the Bankruptcy Act; that Peoples' loan application "met *none* of the [SBA] guidelines for loan approval;" that an SBA staff recommendation for disapproval of the loan was nonetheless rejected by the SBA's District Director, "who felt that the social welfare advantages of the proposal, in providing 'a sympathetic training environment for persons in minority groups,' outweighed the adverse factors which normally would justify rejection of such a loan;" and that the District Director, contrary to the strong recommendation of the bankruptcy judge, conditioned his approval on Mr. Holland's guaranteeing the loan personally. *United States v. Peoples Household Furnishings, Inc., et al.,* Nos. 78-1368 and 79-1485, 667 F.2d 1029 (6th Cir., Oct. 21, 1981), at pp. 1–2.

ment on appeal. (See the citation in n.1, *supra*.)

The government represents that entry of the judgment was followed by years of unsuccessful collection efforts. Mr. Holland represents that the government simply sat on its judgment, allowing interest to accrue. Whatever the facts may be in this regard, both sides agree that the judgment eventually became dormant.[2]

In April of 1993 the government filed a complaint in federal district court alleging that there was an unpaid balance of $884,-174.38 on the 1978 judgment. The complaint prayed for judgment in that amount, plus interest and a 10 percent surcharge under 28 U.S.C. § 3011. Mr. Holland moved for dismissal under Mich.Comp.Laws § 600.5809(3), which provides in pertinent part that "the period of limitations is 10 years for actions founded upon judgments or decrees rendered in a court of record of this state, or in a court of record of the United States ... from the time of the rendition of the judgment."

In July of 1993 the district court denied the motion to dismiss and granted summary judgment to the government.[3] Mr. Holland moved for reconsideration, asserting a defense of laches in addition to his statute of limitations defense. The district court denied the motion for reconsideration, and this appeal followed.

## II

■ The ancient rule *quod nullum tempus occurit regi*—"that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations"—has enjoyed continuing vitality for centuries.

*Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). Citing Blackstone, Mr. Justice Story noted nearly 175 years ago that the reason for the rule was sometimes asserted to be that "the king is always busied for the public good, and, therefore, has not leisure to assert his right within the time limited to subjects." *United States v. Hoar*, 26 F.Cas. 329, 330 (Cir.Crt.D.Mass.1821). This rather quaint rationale did not strike Story as persuasive: "The true reason," he said, ".... is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Id.* Accord, *United States v. Weintraub*, 613 F.2d 612, 618 (6th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). See also *United States v. Kirkpatrick*, 22 U.S. (9 Wheat.) 720, 735, 6 L.Ed. 199 (1824) (Story, J.) ("The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions").

In *Custer v. McCutcheon*, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1931), the Supreme Court held that where a state statute authorized the issuance of writs of execution within five years after the entry of judgment, the United States could not levy execution in that state on a judgment entered in favor of the United States more than five years before the levy. But noting that "[t]he time limited for issuing executions is, strictly speaking, not a statute of limitations," the Court was at pains to point out that the government "is not precluded from bringing

---

**2.** Under Rule 69(a), Fed.R.Civ.P., the procedure on execution of a federal judgment follows state practice and procedure except to the extent that a federal statute provides otherwise. In telling us that the 1978 judgment became "dormant," the parties presumably mean that it reached an age at which it could not be enforced under Michigan law.

**3.** The judgment was for "the sum of $884,174.38 plus interest at the rate of six percent per annum from the date of default to the date of judgment; costs; penalty charges; ten percent surcharge

per 28 U.S.C. § 3011(a); and interest from date of judgment at the legal rate in effect on such date." According to the government's complaint the $884,174.38 figure included interest to April 15, 1993. We are at a loss to understand why the government should be entitled to additional interest on that figure "from the date of default," and we have questions about the penalty charges and ten percent surcharge as well. Mr. Holland has raised no issue about these matters, but we do not intend to preclude him from doing so in the district court.

an action upon the judgment...." *Id.* at 519, 51 S.Ct. at 532.

*United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), on which the district court relied in the case at bar, did not involve an action upon a judgment. In other respects, however, the facts of that case were similar to those in the case at bar. The defendant in *Summerlin* was the administratrix of the estate of one J.F. Andrew. Mr. Andrew had executed a promissory note under the National Housing Act, 48 Stat. 1246, and following a default the note had been assigned to the Federal Housing Administrator. After Mr. Andrew's death the administratrix gave notice by publication that creditors of the estate had eight months, as provided by state statute, to file proof of their claims. The FHA filed its claim 11 months later, and the state supreme court—treating the statute as "a statute of non claims" rather than a statute of limitations—held the claim void. *United States v. Summerlin,* 140 Fla. 475, 477, 191 So. 842, 843 (1939). The Supreme Court of the United States reversed this judgment.

Chief Justice Hughes, speaking for a unanimous court in *Summerlin,* declared it to be "well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." 310 U.S. at 416, 60 S.Ct. at 1020. Insofar as the state statute purported to invalidate the claim of the United States, the statute "transgressed the limits of state power." *Id.* at 417, 60 S.Ct. at 1021. This was so because, in the words of the Court,

> "When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.*

And because the claim had been acquired by the FHA on behalf of the United States through operations under the National Housing Act, the Court implicitly held, the United States was asserting the claim "in its governmental capacity."

The Supreme Court distinguished *Summerlin,* but did not question its continued validity, in *United States v. California,* 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993). There the United States had retained a private contractor to manage oil drilling operations on government land. The contractor was to be compensated through reimbursement of its costs plus a fixed fee. The State of California assessed sales and use taxes against the contractor on property purchased by it, and the taxes were paid under protest with funds advanced by the federal government. After the state statute of limitations on tax refund suits had run, the United States filed a declaratory judgment action seeking to establish that the taxed property was exempt under California law. Rejecting a contention that the United States had a federal quasi-contract claim that was not subject to the statute of limitations for tax refunds, the Supreme Court held the declaratory judgment action time-barred under state law. The government was in no better position than it would be in as a subrogee of the contractor, the Court reasoned, and the government acquired no special rights by stepping into the shoes of one whose rights had lapsed. 507 U.S. at 751–57, 113 S.Ct. at 1788–90.

In response to an argument based on *Summerlin* to the effect that the United States is not bound by state statutes of limitation, the Court pointed out that the claim on which the government sued in *Summerlin* had been received by assignment pursuant to a federal statute, the National Housing Act. *California,* 507 U.S. at 757–59, 113 S.Ct. at 1791. "[T]he Government was proceeding in its sovereign capacity" in *Summerlin,* moreover, whereas in *California* the government "became entitled to its claim by indemnifying a private contractor's state-law debt." *Id.* The clear implication is that in so indemnifying its contractor, the government was acting in its individual or proprietary capacity, as opposed to its sovereign capacity.

■ Was the United States also acting in a proprietary capacity in the case at bar? We think not. Here, as in *Summerlin,* it was pursuant to a federal statute that the government became the assignee of the note on which it brought suit. The statute in question was designed to enhance the securi-

ty and economic well-being of the nation, see 15 U.S.C. § 631, and its purposes are surely no less "governmental" in character than those of the National Housing Act.

The decision of the SBA's district director to approve the Peoples loan in the first place seems to have been based entirely on the "social welfare advantages" of the loan. See n.1, *supra.* It may be clear in the light of hindsight that the director was doing defendant Holland no service in approving the loan, just as he was doing the taxpayers no service, but the director's motivation at the time had a quintessentially governmental cast to it. The approval of the loan, like the taking of the assignment when the loan went sour, was unquestionably governmental, in our view, and not proprietary.

The United States likewise acted in a governmental capacity when it reduced its claim to judgment, and when, having failed to collect, it brought suit on the judgment. The Small Business Act authorizes pursuit, "to final collection," of "all claims against third parties assigned to the Administrator in connection with loans made [and, presumably, guaranteed] by him." 15 U.S.C. § 634(b)(4). The suit on the judgment against defendant Holland was no less a step toward "final collection" than the original suit was. See *United States v. Kellum,* 523 F.2d 1284 (5th Cir.1975), where a state statute of limitations was held inapplicable to an action brought to renew a dormant judgment for the unpaid balance of an SBA loan.

Our conclusion that the United States was acting in a governmental or sovereign capacity here, as those terms are used in *Summerlin* and *California,* finds support in the recent case of *Farmers Home Admin. v. Muirhead,* 42 F.3d 964 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 16 (1995). There the Court of Appeals for the Fifth Circuit held that mortgage foreclosure proceedings instituted to collect balances due on notes held by the Farmers Home Administration, a federal agency, were not subject to a state statute of limitation. Just as in *Summerlin,* the proceedings in *Muirhead* "arose from a federal loan program and [the agency] was proceed-

ing 'as the sovereign'. . . ." *Id.* at 965–66, n. 4.

III

■ Although the *Muirhead* court accepted the proposition that state statutes of limitation may not run against the sovereign, the court observed by way of dictum that this proposition "seems quite inappropriate in the context of federal loan programs." *Id.* at 967. In some situations, as the court pointed out, the Supreme Court has adopted state law as the appropriate federal rule where nationwide uniformity is not necessary, adoption of state law would not frustrate specific federal objections, and imposition of a federal common law rule—which is what the *nullum tempus* rule is—would disrupt commercial relationships based on state law. *Id.,* discussing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), and *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The Fifth Circuit then went on to express itself as follows:

"Contrary to the commercial realism prominent in all of these cases, the ancient attribute of sovereignty asserted by the federal government is far more appropriate to essential sovereign functions than to the federal government's role as a lender to veterans, small business owners, farmers, and disaster victims among others. That the attribute is ancient does not make it sensibly applicable to the government's role in commercial transactions.

\* \* \*

In short, *Summerlin* and related cases ought to be reconsidered insofar as they hold that state statutes of limitations may not be applied to the government's real property foreclosure actions arising from federal loan programs." *Muirhead,* 42 F.3d at 967–68.

Reconsideration of *Summerlin* might likewise make sense, we think, with respect to the revival of dormant judgments obtained by the United States under what *Muirhead* refers to as the government's "numerous,

long-lived and often default-prone federal lending programs...." *Id.* at 967. Is it really justifiable, in today's world, that judgments obtained on loans made or guaranteed under these programs should be subject to resuscitation 15 or 30 or 60 years after entry, regardless of state law to the contrary? Probably not.

When Mr. Justice Story spoke in *Kirkpatrick*, 22 U.S. at 734, of the government's agents being "scattered," he had in mind that their geographic isolation made it difficult for their superiors, even with "the utmost vigilance," to keep track of what the agents were or were not doing. In the age of computer networks, however, this is no longer the case. Today, surely, the staff of the United States Attorney, or the people in the Civil Division of the Department of Justice in Washington, could readily alert themselves electronically to any and all of the government's uncollected judgments that are getting close to a specified age. We doubt that the foundations of the republic would crumble if the government were now to be held to the same timetables as everyone else in suing to renew its money judgments.

### IV

It is not for this court to revisit *Summerlin,* however. The judgment of the district court is therefore **AFFIRMED.**