Filed 7/26/23  First Am. Properties and Acquisitions v. Shante CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| FIRST AMERICAN PROPERTIES AND ACQUISITIONS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JATINDER K. SHANTE, <br><br> Defendant and Respondent. | B313054 <br><br> (Los Angeles County Super. Ct. No. 19STCV02723) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiff and Appellant.

Law Offices of Lloyd S. Mann and Lloyd S. Mann for Defendant and Respondent.

_____

This appeal presents the question of whether a wage garnishment renews the six-year statute of limitations applicable to contract claims brought by a federal agency. (See 28 U.S.C. § 2415(a) (section 2415(a)).) Defendant and respondent Jatinder K. Shante guaranteed a Small Business Administration (SBA) loan on behalf of a business she partially owned, defendant Fornia Hospitality Group, LLC (Fornia). When Fornia defaulted, the SBA demanded Shante pay the full amount. When she did not tender such payment, the SBA began garnishing her wages. Plaintiff and appellant First American Properties and Acquisitions, Inc. (First American) thereafter purchased the defaulted loan from the SBA and became the SBA's assignee.

After First American filed a collection suit against Fornia, Shante, and other guarantors, the trial court granted summary judgment in favor of Shante on the ground that First American's claim was barred by the statute of limitations. First American contends the trial court erred, arguing that garnishments of Shante's wages were "partial payment[s]" that caused First American's "right of action [to] be deemed to accrue again at the time of each such [partial] payment." (§ 2415(a).) First American argues in the alternative that the promissory note and guarantee Shante signed waived the statute of limitations. For the reasons explained below, we reject these arguments and affirm.

## FACTS AND PRIOR PROCEEDINGS

The basic facts of this case are undisputed. Nevertheless, because this is an appeal from summary judgment, we interpret the facts "in a light favorable to . . . the losing party" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768), here First American.

In February 2006, Shante and her husband, defendant Bhupinder S. Shante, along with two other individuals, defendants Satwant C. Chehal and Harban S. Chehal,[1] formed Fornia for the purpose of buying a hotel or motel. The Shantes and Chehals owned 50 percent each of Fornia. Soon afterward, Fornia purchased a Ramada Inn in Merced for approximately $7.2 million. To help pay for the hotel, Fornia obtained a bank loan for $4,451,000, as well as an additional loan through an SBA program for $1,347,000. The deed of trust that secured the SBA loan was subordinate to the deed of trust securing the bank loan. Each of the four members of Fornia signed a personal "guarantee" of the SBA loan.

The hotel property did not perform as well as expected, and by late 2008, Fornia had stopped making regular payments on the loans. The bank foreclosed on the hotel, which was sold at a trustee's sale in January 2010 for an amount that did not cover the full balance of the bank loan, let alone the SBA loan. Between 2010 and 2012, Shante received several notifications that the SBA loan was in default. In a letter dated February 21, 2012, the SBA wrote to Shante that she was personally responsible as guarantor for the loan, and that the full balance of $1,506,459.13 was due as of the date of the letter. In March and July 2012, Shante received notices of wage garnishment orders, and from 2012 to 2017, the federal government garnished her wages.

---

[1] The other defendants in this case are not parties to this appeal. First American settled its claims against the Chehals and dismissed Fornia without prejudice. The record does not reveal the status of First American's case against Shante's husband Bhupinder Shante.

3

On February 22, 2018, six years and one day after the SBA demanded payment from Shante of the full balance of the loan, the SBA assigned the loan to First American.  In December 2018, First American notified Shante and the other Fornia members that the full amount of the debt was due immediately.  According to First American, the debtors owed $1,151,489.96 in principal and $310,866.97 in interest as of the date of the assignment.

On January 25, 2019, First American filed a complaint against Fornia, Shante, and the other three guarantors of the SBA loan alleging causes of action for breach of written contract and promissory note, breach of guarantee, breach of a security agreement, unjust enrichment, money had and received, and account stated.

Shante moved for summary judgment alleging that because First American had failed to file suit within the six-year statute of limitations specified under section 2415(a), First American's claims were time-barred.  The trial court agreed and granted summary judgment in favor of Shante.

## DISCUSSION

### A.   Federal Law Supplies the Statute of Limitations for First American's Claim

Both sides agree, and we concur, that because First American is an assignee of a claim that previously belonged to the federal government, section 2415(a) supplies the applicable statute of limitations rather than any state statute.  This is pursuant to the so-called *Summerlin*[2] rule, which provides that

---

[2] *United States v. Summerlin* (1940) 310 U.S. 414 [60 S.Ct. 1019, 84 L.Ed. 1283] (*Summerlin*).

4

"the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. [Citations.] The same rule applies whether the United States brings its suit in its own courts or in a state court." (*Summerlin*, *supra*, 310 U.S. at p. 416; accord, *U.S. v. Thornburg* (9th Cir. 1996) 82 F.3d 886, 893 ["as a sovereign, the United States is subject to a limitations period only when Congress has expressly created one"].) The Supreme Court explained in *Summerlin* that "When the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." (*Summerlin*, *supra*, at p. 417.)

The exemption from state statutes of limitation remains in effect even if the federal government assigns its claim, under the principle that "an assignee generally 'stands in the shoes of the assignor.' " (*White v. Moriarty* (1993) 15 Cal.App.4th 1290, 1298, quoting *Mountain States Financial Resources v. Agrawal* (W.D.Okla. 1991) 777 F.Supp. 1550, 1552.) Public policy also counsels in favor of granting assignees freedom from state statutes of limitations, in that this "improves the marketability of instruments held by the United States, thereby giving the United States greater flexibility in monetizing its claims." (*UMLIC VP LLC v. Matthias* (3d Cir. 2004) 364 F.3d 125, 133.)

The *Summerlin* rule is subject to limitations, one of which is that it applies only "when 'the government was proceeding in its sovereign capacity.' " (*Bresson v. C.I.R.* (9th Cir. 2000) 213 F.3d 1173, 1177, quoting *United States v. California* (1993) 507 U.S. 746, 757 [113 S.Ct. 1784, 123 L.Ed.2d 528].) The issuance and collection of SBA loans fit within this restriction. (See *U.S.*

5

*v. Thornburg, supra*, 82 F.3d at p. 894.) The court in *U.S. v. Peoples Household Furnishings, Inc.* (6th Cir. 1996) 75 F.3d 252 noted that *Summerlin* itself involved an effort to collect on a loan assigned to the United States under the National Housing Act, and reasoned that the statute under which the SBA operates "was designed to enhance the security and economic well-being of the nation [citation], and its purposes are surely no less 'governmental' in character than those of the National Housing Act." (*Peoples Household Furnishings, Inc., supra*, at pp. 255-256.)

Given that federal law supplies the governing statute of limitations, "[section] 2415(a) applies to actions brought by the SBA to enforce guarantees on defaulted loans." (*U.S. on Behalf of Small Bus. Admin. v. Richardson* (3d Cir. 1989) 889 F.2d 37, 39 (*Richardson*).) The statute states that, subject to exceptions not relevant here, "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . : *Provided,* That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment." (§ 2415(a).) Because First American is seeking money damages on the basis of a contract claim that was assigned to it by the federal government, its claim is subject to section 2415(a).

**B.    The Garnishment of Shante's Wages Did Not Constitute a "Partial Payment" for Purposes of Renewing the Statute of Limitations**

"The general rule is that a cause of action upon a guarantee of a note accrues not upon a mere default in payment, but only when the creditor notifies the guarantor that the entire debt has been accelerated and demands payment of the entire balance. [Citations.]" (*U.S. v. Lorince* (N.D.Ill. 1991) 773 F.Supp. 1082, 1085 (*Lorince*).)  In this case, the cause of action accrued no later than February 21, 2012, when the SBA demanded payment of the full balance of the loan from Shante.  First American acknowledges that more than six years elapsed from this point until it filed suit against Shante in January 2019.

First American contends its suit was nevertheless timely, arguing that the garnishment of Shante's wages between 2012 and 2017 constituted "partial payment[s]" that caused "the right of action . . . to accrue again." (§ 2415(a).)[3]  Under First American's interpretation, no more than two years elapsed from the final partial payment until First American filed suit.  Shante disagrees, contending that the amounts the government received via wage garnishment were not partial payments, as that term is used in section 2415(a), because they were not voluntary.  We review this statutory interpretation question de novo.  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

_____

[3] In its opposition to Shante's motion for summary judgment, First American also argued that the garnishment proceedings equitably tolled the statute of limitations.  First American does not renew that argument in its appellate briefing, and we do not address it.

In support of its position, First American relies almost entirely on the text of the statute itself, which it argues is unambiguous. First American contends that if Congress had meant for only voluntary partial payments to restart the statute of limitations, it would have used the word "voluntary" in section 2415(a). The lack of such a modifier, according to First American, is decisive.

First American is correct that a "statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent." (*Green v. State of California* (2007) 42 Cal.4th 254, 260.) We do not agree, however, that the meaning of "payment" in section 2415(a) is unambiguous. First American's argument as to the lack of the word "voluntary" to modify "partial payment" can be just as easily turned around: If Congress had meant to enact First American's interpretation of the statute, it could have written "partial payment, whether voluntary or involuntary." The lack of a clarification in either direction leaves section 2415(a) "susceptible to more than one interpretation." (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.) In addressing this ambiguity, "we 'may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.]' [Citation.]" (*Ibid.*)

The court in *Lorince* examined the legislative history of section 2415(a) and concluded it "reflects a congressional intent to codify the common law [rule] that '[t]he obligation of a debt will continue where a debtor has acknowledged the debt and indicated his willingness to discharge the obligation.' [Citations.]

8

This principle rests in turn upon the premise that when a debtor has unequivocally acknowledged a preexisting debt and demonstrated an intention to honor it, she has effectively made a new promise to pay the debt and thereby triggered a new limitations period.  [Citation.]" (*Lorince, supra*, 773 F.Supp. at p. 1087.)  In light of this history, the *Lorince* court concluded that to renew the statute of limitations under section 2415(a), "the circumstances of the payment must reflect the intent of the debtor to honor the debt." (*Ibid.*)  In other words, "only if the [debtor has] voluntarily consented to the partial payment does that payment revive the statute of limitations as to them."  (*Id.* at p. 1093.)

Two additional considerations counsel in favor of the *Lorince* court's interpretation.  First, section 2415(a) allows not only for a partial payment, but also for a "written acknowledgment of debt," to restart the statute of limitations.  First American concedes that a "written acknowledgment is necessarily voluntary," but argues that we should not infer that Congress intended a similar voluntariness requirement for partial payments.  This is contrary to the canon of statutory construction known as *ejusdem generis*, which provides that " ' " 'when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope.' " ' [Citations.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 531.)  Because a written acknowledgment must be voluntary, we infer that Congress intended to impose the same requirement on partial payments.

Second, courts have interpreted the analogous California law, Code of Civil Procedure section 360, the same way.  In

*Martindell v. Bodrero* (1967) 256 Cal.App.2d 56, the court stated that, "As a general rule, part payment of a debt or obligation is sufficient to extend the bar of the statute. The theory on which this is based is that the payment is an acknowledgment of the existence of the indebtedness which raises an implied promise to continue the obligation and to pay the balance." (*Id.* at p. 59.) If the debtor does not make the payment voluntarily, there is no such implied promise. (See *id.* at pp. 59-60.) In other words, "the mere entry of a credit by the creditor without the consent of the debtor is without effect upon the statute of limitations." (*Bullock v. Simon* (1955) 132 Cal.App.2d Supp. 881, 882.) Of course, these cases interpreted California law, not section 2415(a), but they show the court in *Lorince* accurately interpreted the background common law principles from which Congress drew when enacting section 2415(a). (*Lorince*, *supra*, 773 F.Supp. at p. 1087.)

In support of its position, First American cites *United States v. Quinones* (D.P.R. 1983) 36 B.R. 77 (*Quinones*). In that case, the defendants and a third party defaulted on a bank loan they had jointly obtained. The third party filed for bankruptcy, at which point the note was assigned to the SBA, which received a distribution from the bankruptcy court. (*Id.* at p. 78.) The district court held that because this distribution reduced the amount the defendants owed, it constituted a partial payment that renewed the statute of limitations under section 2415(a). The suit the government subsequently filed against the defendants was thus timely. (*Quinones*, *supra*, at p. 79.)

But the court in *Quinones* did not explicitly consider the question of whether a payment must be voluntary, nor did it examine the legislative history of the statute detailed in *Lorince*.

It simply asserted[4] that the defendants, by acknowledging that the distribution from the bankruptcy court reduced the remaining balance on their debt, "acknowledged the existence of their debt and . . . impliedly promised to pay the balance." (*Quinones*, *supra*, 36 B.R. at p. 79.) We join the court in *Lorince*, *supra*, 773 F.Supp. at page 1092 in finding *Quinones* unpersuasive.

Finally, First American argues that we should construe the garnishment as a partial payment because Shante is legally presumed to be aware of the federal garnishment statute (31 U.S.C. § 3720D), "consented to garnishment by borrowing from the federal government," and consented further by failing to contest the garnishment order. We disagree. Even if we assume Shante consented to potential garnishment of her wages, she gave that consent at the time she agreed to guarantee the loan, not at the time of garnishment. Her subsequent "passive acquiescence in the [garnishment] constituted neither a voluntary payment as of that date, nor a new promise in writing to pay the balance of the debt." (*Wolford v. Cook* (1898) 71 Minn. 77, 79 [73 N.W. 706, 707]; accord, *Lorince*, *supra*, 773 F.Supp. at

---

[4] The *Quinones* court cited *United States v. Glens Falls Ins. Co.* (N.D.N.Y. 1982) 546 F.Supp. 643 in support of its position (see *Quinones*, *supra*, 36 B.R. at p. 79), but the court's reasoning in *Glens Falls* is more in line with *Lorince*. The court in *Glens Falls* stated that "whether part payment takes a case out of the statute of limitations depends on the intention of the debtor," and that "it is the intent of the debtor when he made the payment, not the intention of the creditor when he received the payment, that is the crucial inquiry here." (*Glens Falls*, *supra*, at pp. 645-646.)

p. 1091.)  Indeed, as far as we can see, she "had no reason to object, and, if [she] had done so, it would have been futile." (*Wolford*, *supra*, at p. 79.)

Because the garnishment of Shante's wages did not reflect a voluntary decision by Shante at the time of the garnishment, it did not constitute a partial payment under section 2415(a).[5]  The trial court did not err by finding First American's claims time-barred.

## C.    First American Forfeited Its Claim that Shante Waived the Statute of Limitations

First American argues for the first time in this appeal that Shante waived the statute of limitations when she signed the guarantee and the security agreement of the SBA loan, and that the trial court therefore erred by granting summary judgment. We reject this claim as forfeited because First American failed to argue it before the trial court.

" ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." . . .  Such arguments raised for the first time on appeal are generally deemed forfeited.' [Citation.]" (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.)  First American nevertheless urges us to consider its argument on waiver of the statute of limitations, arguing that it is "an issue of law that an

[5] We need not and do not address Shante's additional argument that the payments did not come from Shante herself, but rather from her employer, and that this fact also disqualified the garnishment payments from being partial payments under section 2415(a) that renewed the statute of limitations.

12

appellate court may address even for the first time on our review." (*Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125.)

Although we have discretion to consider pure questions of law raised for the first time on appeal, we are not required to do so. (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567; *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275-1276, fn. 3.) To do so would be inappropriate here, where Shante had no opportunity to argue the issue before the trial court (see *Wittenberg*, *supra*, at p. 567), particularly because it is not at all clear that the issue "involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence." (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1237-1238.)

Our forfeiture decision might be different if the guarantee contained language unambiguously and explicitly waiving the statute of limitations, but the guarantee does not. First American argues that we may infer a waiver of the statute of limitations by combining three different provisions of the contracts Shante signed. First, the guarantee states that it "remains in effect until the [n]ote is paid in full." Next, in a section labeled "general provisions," under a subheading labeled "lender's rights cumulative, not waived" (capitalization omitted), the guarantee states, "[l]ender may delay or forgo enforcing any of its rights without losing or impairing any of them." Finally, in a separate security agreement that Shante signed on behalf of Fornia, a provision states that "[f]ailure or repeated failure to enforce any rights hereunder shall not constitute an estoppel or

13

waiver of [the lender's] rights to exercise such rights accruing prior or subsequent thereto."

" ' "[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated' " ' " (*Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434), and we are skeptical that a waiver of an important protection may be pieced together from these disparate elements, none of which refers explicitly to the specific right to be waived.  That is particularly true when the guarantee Shante signed did include explicit waivers of other rights.  The guarantee included four waivers of rights, seven waivers of notice, and 16 waivers of defenses, none of which had anything to do with a statute of limitations.  In a similar situation, the court in *Richardson*, *supra*, 889 F.2d 37 rejected an argument for a waiver of the statute of limitations under section 2415(a) on the basis of a clause allowing the lender to enter a confession of judgment "at any time." (*Richardson*, *supra*, at p. 38.)  The court reasoned that "the operative phrase in this section, 'at any time,' lacks sufficient specificity to put the reader on notice of its consequences at the inception of the transactions.  Not only does this phrase remain undefined, the paragraph fails to make any mention whatsoever of the term 'statute of limitations.' " (*Id.* at p. 40.)  The court in *Richardson* also noted that the lack of clarity regarding the waiver of the statute of limitations stood "in stark contrast to the clarity of other waivers, not at issue here, that are contained in the same paragraph." (*Ibid.*)

At a minimum, due process entitled Shante to an opportunity to argue before the trial court that the documents were ambiguous, and to seek to introduce extrinsic evidence

14

regarding the interpretation of the contract.  (See *Esparza v. KS Industries, L.P.*, *supra*, 13 Cal.App.5th at p. 1238 [declining to review forfeited argument where additional evidence might have altered the outcome]; accord, *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 699-700.)  Shante had no such opportunity here, and we will therefore not consider First American's statute of limitations waiver argument for the first time on appeal.

## DISPOSITION

The judgment of the trial court is affirmed.  Shante is awarded her costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.