

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2004

# UMLIC VP LLC v. Matthias

Precedential or Non-Precedential: Precedential

Docket No. 03-1140

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"UMLIC VP LLC v. Matthias" (2004). *2004 Decisions.* Paper 758.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/758

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-1140

UMLIC VP LLC, Successor in Interest
and Assignee of the UNITED STATES
OF AMERICA (Small Business
Administration)

v.

ARETHA MATTHIAS,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF WESLEY MATTHIAS; CARLTON
PARSON; ELECIA PARSON;
OSWALD C. VENZEN; ALICE
VENZEN; GOVERNMENT OF THE
VIRGIN ISLANDS, BUREAU OF
INTERNAL REVENUE;
DEPARTMENT OF FINANCE;
UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE;
MICHAEL A. MATTHIAS;
ROSEMARIE WEBSTER; BRUCE W.
MATTHIAS; ELIZABETH
OLIVACCE; LAURIE THOMAS;
CARRIE EDDY, AND ALL PERSONS
CLAIMING AN INTEREST IN
REMAINDER OF PARCEL NO.7
SORGENFRIM a/k/a NOS. 7B AND 7C
ESTATE SORGENFRI;

Carlton Parson, Elecia Parson, and

Oswald C. Venzen,

Appellants

_____

NO. 03-1239

UMLIC VP LLC, Successor in Interest
and Assignee of the UNITED STATES
OF AMERICA (Small Business
Administration)

v.

ARETHA MATTHIAS,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF WESLEY MATTHIAS; CARLTON
PARSON; ELECIA PARSON;
OSWALD C. VENZEN; ALICE
VENZEN; GOVERNMENT OF THE
VIRGIN ISLANDS, BUREAU OF
INTERNAL REVENUE;
DEPARTMENT OF FINANCE;
UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE;
MICHAEL A. MATTHIAS;
ROSEMARIE WEBSTER; BRUCE W.
MATTHIAS; ELIZABETH
OLIVACCE; LAURIE THOMAS;
CARRIE EDDY, AND ALL PERSONS
CLAIMING AN INTEREST IN
REMAINDER OF PARCEL NO.7
SORGENFRIM a/k/a NOS. 7B AND 7C
ESTATE SORGENFRI

Aretha Matthias, Michael A. Matthias,
Rosemarie Webster, Bruce W. Matthias,

Elizabeth Olivacce, Laurie Thomas, and Carrie Eddy,

Appellants

On Appeal From The District Court Of The Virgin Islands
(D.C. No. 01-cv-00098)
District Judge:
Honorable Thomas K. Moore

_____

Argued December 8, 2003
Before: NYGAARD, BECKER, and STAPLETON, Circuit Judges.

(Filed April 5, 2004)

ARCHIE JENNINGS, JR. (Argued)
Archie Jennings, P.C.
8A&B Bjerge Gade
P.O. Box 442
Charlotte Amalie, St. Thomas,
USVI 00804

Attorney for Appellants in No. 03-1239

ROBERT L. KING (Argued)
Law Offices of Robert L. King
Windward Passage Hotel
P.O. Box 9768, Veterans Drive
Charlotte Amalie, St. Thomas,
USVI 00801

Attorney for Appellants in No. 03-1140

CAROL A. RICH (Argued)
Campbell, Arellano & Rich
4A&B Kongens Gade
P.O. Box 11899
Charlotte Amalie, St. Thomas,
USVI 00801

Attorney for Appellee UMLIC VP LLC

_____

OPINION
_____

BECKER, Circuit Judge.

This appeal in a diversity-based mortgage foreclosure action stemming from a default on a loan guaranteed by the United States Small Business Administration (the "SBA"), which ultimately transferred to the plaintiffs in foreclosure, UMLIC VP LLC ("UMLIC"), the mortgages which secured the loans, presents three important questions. First, is the right to foreclose on a Virgin Islands mortgage extinguished at the time the right to collect an *in personam* judgment expires? We conclude that it is not. Second, is an action brought by a successor in interest of the United States (as UMLIC was) governed by federal limitations periods or state/territorial (here, Virgin Islands) limitations periods? We hold that federal law supplies the statute of limitations in cases where the plaintiff is a

successor in interest to the United States. Third, is there a federal limitations period applicable to mortgage foreclosure actions? Applying the maxim that "time does not run against the sovereign," and finding no federal statute to the contrary, we conclude that there is not. We therefore affirm the District Court's order for a foreclosure sale and vacate the stay that this Court entered pending appeal.[1]

## I. Facts and Procedural History

### A. The Loan

The defendants in this case are the fee owners, respectively, of three parcels of land on St. Thomas, and a variety of lienholders on those properties. Only the fee owners are participating in this appeal, and we shall refer to them as the defendants. They are Aretha Matthias and the heirs of Wesley Matthias (Michael A. Matthias, Rosemarie Webster, Bruce W. Matthias, Elizabeth Olivacce, Laurie Thomas, and Carrie Eddy); Carlton and Elecia Parson; and Oswald Venzen. Because the defendants rest their case primarily on statute of limitations grounds, some chronology of the events is important.

Pursuant to a federal loan guarantee program for small businesses, a loan was made on April 12, 1988 by Barclays Bank PLC ("Barclays") to Matthias Enterprises, a corporation run by the various defendants that owned and operated a bakery and convenience store on St. Thomas. The loan carried an interest rate of 2.75% above prime, variable quarterly. The principal amount of the loan was $550,000, of which 85% was guaranteed by the SBA. The loan was secured by the personal guarantees of Aretha and Wesley

---

[1]Some appellants also claimed that the District Court erred in certain respects in computing the sum owing on the mortgages. Based on our independent examination of the entire record before the District Court, we conclude that these issues were not timely presented to the District Court—not in the pleadings, not on counsel's own initiative, and not even in response to UMLIC's motion for summary judgment. "As a general rule, we do not consider on appeal issues that were not raised before the district court." *Appalachian States Low-Level Radioactive Waste Comm'n v. Pena*, 126 F.3d 193, 196 (3d Cir. 1997) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)). There are exceptional circumstances that call for departure from this rule, *see id.*, but none are present here. Thus we hold these issues waived and will not address them.

We note too, based upon the colloquy at oral argument, that it is highly doubtful that resolution of these collateral matters in a manner favorable to defendants mortgagees would make a difference: It appears that the sum of the liens (both UMLIC's and those of junior

lienholders who are not participating in this appeal) on the properties so far exceeds the probable foreclosure sale prices of the properties that the mortgagors have no chance of recovering a residue from the foreclosure sale.

Matthias, Carlton and Elecia Parson, and Oswald and Alice Venzen.[2] The Matthiases, Parsons, and Venzens secured their personal guarantees by granting mortgages in favor of Barclays on their own real property using the following language:[3]

> WITNESSETH, that to secure the guaranty of payment by MATTHIAS ENTERPRISES, INCORPORATED (the "Borrower") of an indebtedness to the Mortgagee to be paid with interest according to a certain promissory note (the "Note"), bearing even date herewith, executed by Borrower pursuant to the terms of a certain Loan Agreement of even date herewith between the Borrower and the Mortgagee [i.e., Barclays] (the "Loan Agreement"), the terms of which are hereby made a part of this instrument, and further to secure the performance by the Borrower of the terms of the Loan Agreement and related loan documents executed of even date herewith, and also to secure any and all sums now or from time to time hereafter owing by Borrower and for which Borrower may be liable, solely or jointly, the Mortgagor [i.e., the Matthiases] hereby grants and gives to the Mortgagee a Second Priority Mortgage in the principal sum of ONE HUNDRED FIFTY THOUSAND DOLLARS $150,000.00 plus interest on [description of property follows].

Judging from an SBA document captioned "Lender's Transcript of Account," Matthias Enterprises defaulted on the loan as early as the fall of 1988. Matthias Enterprises was certainly in default when it filed a Chapter 11 bankruptcy petition in 1992. This petition was later converted to a Chapter 7 liquidation. Effective February 15, 1994 (less than six years from the time of default, under any reading), the SBA made good on its guarantee and repurchased the loan from Barclays, ending Barclays' involvement. Through a series of assignments in 1999 and 2000, the loans came to rest with UMLIC, which, on April 28, 2000 advised the defendants that the loan was in default. This proceeding

---

[2] The record suggests that Alice Venzen no longer owns or resides on the parcel mortgaged by her and Oswald Venzen. She is not a party on appeal.

[3] This language is taken from the note executed by the Matthiases, but the same language, *mutatis mutandis*, was used in the notes executed by the Parsons and by the Venzens.

followed.[4]

### B. Foreclosure Proceedings in the District Court

UMLIC commenced this action in the District Court on June 1, 2001, seeking a declaratory judgment of the amount owed under the Matthias Enterprises note, a judgment of foreclosure on the three properties, and an award of costs and attorneys fees. Originally, UMLIC had also sought an *in personam* judgment against the Matthiases, Parsons, and Venzens (i.e., a deficiency judgment for the amount owing on the notes but unsatisfied by foreclosure on the mortgages), but later amended its complaint to drop those counts (apparently because the statute of limitations had clearly run on any *in personam* contract claims).

On June 4, 2002, the District Court

---

[4]As part of its preparation to begin foreclosure, UMLIC discovered that real property records showed that Barclays had assigned its mortgage interest to Treadstone Carribean Partners LLC ("Treadstone"). This seems to have been an error on Barclays' part, since this assignment was recorded after Barclays had transferred the loan to the SBA. For the reasons given by the District Court—which we need not revisit—even though Barclays' transfer to the SBA was not recorded, it was valid. To uncloud the titles, Treadstone, the SBA, and UMLIC executed a series of corrective assignments recorded May 29, 2001.

held a hearing on what UMLIC's counsel styled as a "motion for summary judgment of foreclosure." The moving papers on both sides were captioned as cross-motions for summary judgment. On December 5, 2002, the District Court filed a memorandum opinion and order granting summary judgment to UMLIC. On December 20, 2002, the District Court entered a declaratory judgment and ordered the U.S. Marshal to conduct a foreclosure sale of the properties. The defendants filed a notice of appeal, and moved the District Court to stay the sale. The District Court refused, but this Court granted the stay pending appeal.

The District Court of the Virgin Islands had 28 U.S.C. § 1332 diversity jurisdiction under 48 U.S.C. § 1612(a). The plaintiff, UMLIC, is a citizen of North Carolina, and none of the defendants are citizens of North Carolina. The order of the District Court was entered on December 20, 2002. The defendants filed timely notices of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

Our review of a grant of summary judgment is plenary. *See Anderson v. Conrail*, 297 F.3d 242, 246-47 (3d Cir. 2002). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the motion, "we must grant all reasonable inferences from the evidence to the non-moving party." *Knabe v. Boury Corp.*,

114 F.3d 407, 410 n.4 (3d Cir. 1997). The chronology recounted above is not in dispute. The only questions before us are legal.

## II. Discussion

### A. The Mortgage and the Personal Guarantee

The defendants contend that the mortgages are no more than security for their personal guarantees, and that, absent an ability to sue in contract for enforcement of those guarantees, UMLIC cannot recover on the mortgages. Because the Virgin Islands statute of limitations for contract claims, 5 V.I. Code § 31(3)(A), and the federal statute of limitations for contract claims, 28 U.S.C. § 2415(a), both provide for a six-year limitations period, and the lawsuit was filed outside that period, the defendants assert that irrespective of which statute applies, a suit on the security for the guarantees (i.e., the mortgages) is barred along with an *in personam* suit on the guarantees.[5]

---

[5]The question whether federal or territorial law provides the statute of limitations—noted in the text—is but one facet of a larger choice-of-law question here. One could well ask whether federal or territorial law governs a claim to relief on a mortgage granted pursuant to a federal loan guarantee program after suit on the principal obligation is barred. We do not address this in detail, however, for two reasons. First, the papers of both parties assume that Virgin Islands law provides the rule

The strongest authority that the defendants cite for this proposition is an Alaska case which held as they would have us hold.[6] *Dworkin v. First National Bank of Fairbanks*, 444 P.2d 777, 781-82 (Alaska 1968), acknowledged that opinion was divided over whether a suit to recover security could be maintained even after the statute had run on collection of the underlying debt. Authority is still divided today. *See* 55 Am. Jur. 2d *Mortgages* §§ 680, 683 (2003). The *Dworkin* Court ultimately held that "the sounder result is reached by those authorities which hold that in the absence of a controlling statute the foreclosure action is subject to the same period of limitations as the underlying debt." 444 P.2d at 782. The only authority supplied by the Court was a discussion from a contemporary treatise on real property that discussed the contrary

---

of decision. Second, it appears that a full analysis under *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979), would demonstrate either that Virgin Islands law applies of its own force, or that federal law applies but looks to local law to provide the rule of decision.

[6]It is not unreasonable to look to decisions from Alaska in this case, because the limitations laws of the Virgin Islands were borrowed from Alaska's laws. *See James v. Henry*, 157 F. Supp. 226, 227 (D.V.I. 1957) (Maris, J.). Thus, Alaska court decisions that postdate the Virgin Islands' adoption of Alaska law, while not binding, may be persuasive.

approach, and pronounced it "undesireable."

But there is an equally compelling rationale supporting decisions from jurisdictions that adopt the contrary rule—i.e., those that permit recovery on the mortgage even after the statute of limitations has expired. It is this:

> "The time limit set for the commencement of an equitable action to foreclose is frequently longer than the period prescribed for a law action on debt and, in some states, is unlimited except by the rule of laches. This difference interposes a problem where the mortgagee has permitted the time to run out within which he could bring an action upon the debt, yet wishes to enforce his lien. Since the debt is not usually regarded as extinguished by any passage of time, but only the remedy is barred by the statute of limitations, there is no application here of the rule applied in other situations, that the mortgage cannot stand independently of the obligation which it purports to secure. Accordingly, it is generally accepted that the lien is not thereby destroyed, and that, in the absence of a statute providing otherwise, the mortgagee may proceed to foreclose, either by action for foreclosure, or by advertisement pursuant to a reserved power of sale, being barred only from the obtaining of a deficiency judgment."

*Id.* at 782 n.24 (quoting 3 R. Powell, *The Law of Real Property* 461, at 682-83 (1967)). This persuasive logic undermines the position of the defendants. *Accord Bank of Nova Scotia v. St. Croix Drive-In Theatre, Inc.*, 552 F. Supp. 1244, 1251 (D.V.I. 1982) (holding that "the law is clear that separate actions are available in actions for debt and against a mortgage."), *aff'd on other grounds* 728 F.2d 177 (3d Cir. 1984).

We reject the defendants' argument and endorse the view adopted by the District Court in *St. Croix Drive-In*.[7] The great benefit in using a mortgage on real property as security is the certainty it affords: The property will not go away. The legal complement to the physical stability of real property is the long statute of limitations for actions on real property. Adopting the rule proposed by defendants

---

[7]This holding, of course, has no effect on UMLIC's inability to collect a deficiency judgment from the defendants; as we have noted, such a contract suit is clearly time-barred, and UMLIC has dismissed that cause of action.

7

would sap real property in the Virgin Islands of its appeal as a security under certain guarantee structures, and would likely deter offshore real estate investment. Moreover, we believe that this interpretation is in line with the settled expectations of parties that have entered into transactions secured by mortgages on real property in the Virgin Islands.

We also think the rule we adopt is superior because it can be applied uniformly to this situation, and to the situation where a mortgage stands alone without a personal guarantee, while the rule that defendants propose cannot. *See Hilpert v. Commissioner*, 151 F.2d 929, 932 (5th Cir. 1945). Finally, the Virgin Islands Legislature is free to overrule by statute this part of our decision. Indeed, one treatise notes that the rule barring foreclosure when the statute of limitations has run on the secured note is "frequently the result of express statutory provision." 55 Am. Jur. 2d *Mortgages* § 683 (2003). Thus we conclude that UMLIC may foreclose on the mortgages irrespective of whether it may sue *in personam* to enforce the defendants' personal guarantees.

B. Federal Versus Virgin Island Limitations Period

Having settled that mortgage foreclosure is an independent action under Virgin Islands law, we must determine the statute of limitations applicable to such an action when it is brought by an assignee of the United States. UMLIC claims that an assignee stands in the shoes of the assignor—here the United States—and thus that the federal limitations periods

apply to it as they would if the United States itself brought a foreclosure action. We agree, and join every other appellate court to consider the issue. Three cases in particular command our attention: *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244 (Colo. 1994); *United States v. Thornburg*, 82 F.3d 886 (9th Cir. 1996); and *FDIC v. Bledsoe*, 989 F.2d 805 (5th Cir. 1993). We briefly discuss each of them.

In *Tivoli Ventures*, the question arose in the context of whether an assignee could sue on the United States' (unexpired) cause of action, or was limited to an antecedent (and now-expired) cause of action. There, the FDIC as receiver of a failed bank had assigned to a private party a note held by the bank. The parties did not dispute that the FDIC's cause of action accrued only when the bank was placed in receivership, not when the note first came overdue, hence the FDIC's claim expired later. The private party sued to collect on the note, and was met with the argument that the action was barred by Colorado's six-year limitations period, which started to run from the date the note was overdue. The private party plaintiff argued that as the assignee of the FDIC, it was entitled to the six-year limitations period in 28 U.S.C. § 2415 that started to run from the time the bank was put into receivership. The Colorado Supreme Court agreed, holding that the private-party assignee of the FDIC stood in the shoes of the United States.

Like the case before us, *Thornburg* involved the guarantor-mortgagor's liability when a corporation defaulted on

8

an SBA-backed loan. The guarantee and mortgage were first assigned to a private party, and then assigned back to the SBA which brought the case. The mortgagor argued that the state statute of limitations ran out on the note while it was in the hands of the private party, and thus that the action by the SBA was time barred as well because a transfer (back) to the United States cannot revive a time-barred cause of action. *See FDIC v. Hinkson*, 848 F.2d 432, 434 (3d Cir. 1998) ("If the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency.").[8] The Court of Appeals for the Ninth Circuit held that the federal statute applied. After discussing (and approving) cases that hold that an assignee of the United States stands in the shoes of the United States, the *Thornburg* Court ultimately rested its holding on the fact that the assignment to the private party was only for collection purposes (referred to by some courts as a "consignment"), and the United States never divested itself of the note. *See Thornburg*, 82 F.3d at 891-92. This may make *Thornburg* a more compelling case for application of federal limitations law than this case, because in the case before us now, title to the mortgage has passed to

UMLIC.

*Bledsoe*'s facts are between *Tivoli Ventures* and *Thornburg*. Like *Tivoli Ventures*, *Bledsoe* involved a note that first came to the United States as receiver (the FSLIC) in an S&L insolvency. The note was assigned to a private party (unlike *Thornburg*, this seems to have been a true sale, and not a consignment) and then (via another insolvency) back to the United States as receiver. Like *Thornburg*, the defendant asserted that the four-year state statute of limitations ran on the note while it was in private hands, and could not thereafter be resuscitated by transfer to the United States. The Court of Appeals for the Fifth Circuit held that the six-year federal statute applied to the note while it was in the hands of the assignee of the United States, and thus concluded that the cause of action had not expired.

*Thornburg* lists as adhering to this rule a number of state courts and federal district courts, in addition to the Courts of Appeal for the Fifth and Ninth Circuits; it notes only one contrary decision, *Wamco, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076 (E.D. Va. 1994). *See Thornburg* 82 F.3d at 890-91. Since 1996, when *Thornburg* was decided, the Court of Appeals for the Tenth Circuit has joined this group. *See UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173 (10th Cir. 1999). We too now join the majority view.

In view of the thorough discussions in *Tivoli Ventures*, *Bledsoe*, and *Thornburg*, we simply summarize what we regard as the best doctrinal and public

---

[8]*Hinkson* does not apply here because the earliest date of default was late 1988, and the note was transferred to the SBA in early 1994, a period of less than six years. No party proposes as pertinent to this case any statute of limitations, federal or Virgin Islands, shorter than six years.

policy reasons for the rule that the assignee of the United States stands in the shoes of the United States and is entitled to rely on the limitations periods prescribed by federal law. Doctrinally, an assignee stood in the shoes of the assignor at common law, and the Uniform Commercial Code provides that "[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument." UCC § 3-203(b). Moreover, the Restatement (Second) of Contracts § 336 cmt. b, ex. 3 explains that "A lends money to B and assigns his right to C. C's right is barred by the Statute of Limitations when A's right would have been." We see no reason that the inverse should not hold as well. In public policy terms, affording assignees of the United States the same rights as the United States is desirable because it improves the marketability of instruments held by the United States, thereby giving the United States greater flexibility in monetizing its claims.

## C. The Applicable Federal Limitations Period

Having settled that federal law should govern the limitations period in this case, the question now becomes what that limitations period is. We start with 28 U.S.C. § 2415(c), which concerns "action[s] to establish . . . title to . . . real . . . property." That section provides: "Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property." At the threshold, we note that the literal language of § 2415(c) does not affirmatively establish a

limitations period (or preempt any existing state limitations period). Rather it seems to clarify that the other subsections of § 2415—which we shall come to shortly—do not extend to certain actions involving real property. That said, we do not think § 2415(c) applies to this action.

At common law, a mortgage was "title to . . . real . . . property," § 2415(c), because under the common law, a mortgage granted an estate in land. *See Black's Law Dictionary* 1009-10 (6th ed. 1990):

> Mortgage. . . . At common law, an estate created by a conveyance absolute in its form, but intended to secure the performance of some act, such as the payment of money . . . and to become void if the act is performed . . . . The mortgage operates as a conveyance of the legal title to the mortgagee, but such title is subject to defeasance on payment of the debt . . . .

The Virgin Islands, however, is a "lien theory" jurisdiction. *See BA Props. v. Gov't of V.I.*, 299 F.3d 207, 218-20 (3d Cir. 2002) (citing *Royal Bank of Canada v. Clarke*, 373 F. Supp. 599, 601 (D.V.I. 1974)); *see also* 28 V.I. Code § 290 ("A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law, and a judgment thereon."). As *Black's Law*

*Dictionary* explains, "in many . . . states, a mortgage is regarded as a mere lien, and not as creating a title or estate. It is a pledge or security of particular property for the payment of a debt . . . but is not now regarded as a conveyance in effect." *Black's Law Dictionary* at 1010 (citations omitted).

The implication of all this is that an action to foreclose on a mortgage in the Virgin Islands would not be "an action to establish the title to . . . real . . . property" under § 2415(c), because Virgin Islands law would recognize no interest in real property from the mortgage.[9] Since § 2415(c) does not apply to this action, we next consider whether the six-year limitations period provided in § 2415(a) applies. Our inquiry is guided by the rule of construction that "[s]tatutes of limitations sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984) (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)).

Section 2415(a) provides:

> (a) [Subject to exceptions not pertinent here,] every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later. . . .

Every Court of Appeals to consider the question whether § 2415(a) sets a limitations period on mortgage foreclosure actions has concluded that it does not. This has been the consistent result in both lien theory and title theory jurisdictions, and has held irrespective of how the court has interpreted § 2415(c). *See Westnau Land Corp. v. SBA*, 1 F.3d 112, 114-16 (2d Cir. 1993) (§ 2415(a) does not apply) (citing cases); *FmHA v. Muirhead*, 42 F.3d 964 (5th Cir. 1995) (neither § 2415(a) nor (c) applies); *United States v. Omdahl*, 104 F.3d 1143, 1145-46 (9th Cir. 1997) ("§ 2415(c) applies to a mortgage foreclosure action"); *United States v. Ward*, 985 F.2d 500 (10th Cir. 1993) (Oklahoma is a lien theory state; § 2415(a) does not apply); *United States v. Alvarado*, 5 F.3d 1425, 1429 (11th Cir. 1993) (§ 2415(a) does not apply).

We join these courts in holding that § 2415(a) does not apply to mortgage foreclosure actions. Two related rationales—one or both of which is present in each of the cases cited above—convince us of this. First, foreclosure was a

---

[9]We express no view on the applicability of § 2415(c) in a title theory jurisdiction.

historically equitable remedy. Since § 2415(a) speaks in terms of "damages," a traditionally legal remedy, foreclosure actions are not encompassed by § 2415(a). Second, foreclosure is an *in rem* proceeding, and money damages are not acquired through *in rem* proceedings.

Since no party contends that any of the other limitations periods in other subsections of § 2415 apply, we are left with the result that there is no federally provided statute of limitations for mortgage foreclosure actions. Like the *Muirhead*, *Alvarado*, *Westnau*, and *Ward* Courts, we turn to federal common law to fill the gap.

The gap is filled by what the Court of Appeals for the Tenth Circuit characterized as:

> [t]he maxim, time does not run against the sovereign, combined with the principle that the United States is not bound by a statute of limitations unless Congress has explicitly expressed one, *United States v. John Hancock Mut. Life Ins. Co.*, 364 U.S. 301 (1960)

*Ward*, 985 F.2d at 502; *see also United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 725 (1979) (federal law governs issues involving the rights of the United States arising under nationwide federal programs, though absent Congressional directives to the contrary, state law can provide the federal rule of decision). Thus there is no statute of limitations on

UMLIC's action, and the District Court was correct to rule against the defendants.[10]

The order of foreclosure will be affirmed, and the stay will be vacated.

---

[10]We note that the use of a federal limitations period in federal lending transactions has been subject to forceful criticism. In *Muirhead*, Judge Edith Jones wrote:

> [W]e are troubled by the federal government's insistence that it may enforce ancient mortgages outstanding in numerous, long-lived and often default-prone federal lending programs essentially forever. The continued existence of these mortgages may cloud titles to property all over the country, and in so doing will engender confusion, higher real property transaction costs, and commercial instability. If federal agencies simply conformed their lending practices to the dictates of state law, as every private lender must, they would act more promptly upon defaulted mortgages and would not prejudice the alienability of reality [sic].

*Muirhead*, 42 F.3d at 967.

12